J-S01011-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| MALIK CAMERON, | : | |
| | : | |
| Appellant | : | No. 2010 EDA 2014 |

Appeal from the Judgment of Sentence June 4, 2014
in the Court of Common Pleas of Philadelphia County,
Criminal Division, No(s):  CP-51-CR-0002970-2013;
MC-51-CR-0001492-2013

BEFORE:  GANTMAN, P.J., MUNDY and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                    **FILED MAY 06, 2016**

Malik Cameron ("Cameron") appeals from the judgment of sentence entered following his conviction of aggravated assault, possession of an instrument of crime ("PIC"), and possession of a firearm by a prohibited person.[1]   Counsel for Cameron has filed a Petition to withdraw from representation and a brief pursuant to **Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).  We grant counsel's Petition to withdraw and affirm Cameron's judgment of sentence.

In its Opinion, the trial court summarized the procedural and factual history underlying the instant appeal, which we adopt herein by reference. **See** Trial Court Opinion, 1/6/15, at 1-5 (unnumbered).

---

[1] 18 Pa.C.S.A. §§ 2702, 907, 6105.

Before addressing the merits of the claims raised by Cameron, we first must address his counsel's Petition to withdraw from representation. **See Commonwealth v. Daniels**, 999 A.2d 590, 593 (Pa. Super. 2010) (stating that, "[w]hen presented with an **Anders** brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw."). The procedural requirements for withdrawal require counsel to (1) petition for leave to withdraw and state that, after making a conscientious examination of the record, counsel has concluded that the appeal is frivolous; (2) provide a copy of the **Anders** brief to the defendant; and (3) inform the defendant that he has the right to retain private counsel or raise, *pro se*, additional arguments that the defendant deems worthy of the court's attention.[2] **Commonwealth v. Zeigler**, 112 A.3d 656, 659 (Pa. Super. 2015).

Here, counsel's Petition to withdraw states that he reviewed the record and concluded that the appeal is frivolous. Additionally, counsel notified Cameron that counsel was seeking permission to withdraw, and furnished Cameron with copies of the Petition to withdraw and the **Anders** brief, and

_____

[2] This Court's decision in **Commonwealth v. Millisock**, 873 A.2d 748 (Pa. Super. 2005) and its progeny require that "[c]ounsel also must provide a copy of the **Anders** brief to his client." **Commonwealth v. Orellana**, 86 A.3d 877, 880 (Pa. Super. 2014) (internal quotation marks and citation omitted). The brief must be accompanied by a letter that advises the client of the option to "(1) retain new counsel to pursue the appeal; (2) proceed *pro se* on appeal; or (3) raise any points that the appellant deems worthy of the court[']s attention in addition to the points raised by counsel in the **Anders** brief." **Id.**

advised Cameron of his right to retain new counsel or proceed *pro se* to raise any points he believes worthy of this Court's attention. Accordingly, counsel has satisfied the procedural requirements of **Anders**.

Having concluded that counsel has complied with the procedural mandates of **Anders**, we now determine whether counsel's **Anders** brief meets the substantive dictates of **Santiago**. According to **Santiago**, in the **Anders** brief that accompanies counsel's petition to withdraw, counsel must

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Santiago**, 978 A.2d at 361.

Here, counsel provided the facts and procedural history of the case. **See Anders** Brief at 9-18. Additionally, counsel addresses the claims raised by Cameron, and concludes that the claims are wholly frivolous. **See id.** at 18-38. Because counsel has complied with the minimum requirements of **Anders**/**Santiago**, we will address the merits of the claims raised in the **Anders** brief.

Cameron presents the following claims for our review:

> 1. Did the [trial c]ourt commit reversible error when it denied [Cameron's] motions for a directed verdict and/or judgment of acquittal at the close of the Commonwealth's case?

- 3 -

2. Was the evidence insufficient to sustain [Cameron's] convictions and therefore[, the] verdict [is] not supported by the evidence?

3. Was the verdict of guilty against the weight of the evidence?

4. Did the [trial c]ourt err when, at sentencing, it did not comply with the spirit of **Alleyne v. United States**[, 133 S. Ct. 2151 (2013)]?

**Anders** Brief at 8.

We will address Cameron's first two claims together. Cameron first argues that the trial court improperly denied his motions for a directed verdict and/or judgment of acquittal, at the close of the Commonwealth's case-in-chief. **Id.** at 18. In support, Cameron contends that the Commonwealth failed to prove each and every element of the crimes charged. **Id.** Cameron disputes the trial court's determination that he failed to raise this issue before the trial court, during trial. **Id.** at 19-21. In his second claim, Cameron challenges the sufficiency of the evidence underlying his convictions.[3] **Id.** at 23.

In reviewing a challenge to the sufficiency of the evidence, we evaluate the record "in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the

---

[3] In the **Anders** brief, Cameron appears to conflate a challenge to the sufficiency of the evidence underlying the verdict with a challenge to the verdict as against the weight of the evidence. **See**, **e.g.**, **Anders** Brief at 23 (stating that the verdict is so contrary to the evidence "that it shocks one's sense of justice."). Nevertheless, as we will discuss *infra*, Cameron's challenges to the weight and sufficiency of the evidence are without merit and wholly frivolous.

evidence." ***Commonwealth v. Bibbs***, 970 A.2d 440, 445 (Pa. Super. 2009) (citation omitted).

> Evidence will be deemed sufficient to support the verdict when it established each element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty, and may sustain its burden by means of wholly circumstantial evidence. Significantly, [we] may not substitute [our] judgment for that of the factfinder; if the record contains support for the convictions they may not be disturbed.

***Id.*** (citation and quotation marks omitted). "Any doubt about the defendant's guilt is to be resolved by the factfinder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." ***Commonwealth v. Scott***, 967 A.2d 995, 998 (Pa. Super. 2009).

In its Opinion, the trial court addressed Cameron's first two claims and concluded that they lack merit. ***See*** Trial Court Opinion, 1/6/15, at 5-10 (unnumbered). We agree with the sound reasoning of the trial court, as set forth in its Opinion, and affirm on this basis with regard to Cameron's first

two claims.[4] *See id.*

In his third claim, Cameron asserts that the verdict is against the weight of the evidence. *Anders* Brief at 29. Cameron argues that "the guilty verdicts, especially the [aggravated assault] charge, were so contrary to the weight of the evidence that it shocks one's sense of justice." *Id.* at 30.

A motion for a new trial alleging that the verdict was against the weight of the evidence is addressed to the discretion of the trial court. *Commonwealth v. Cousar*, 928 A.2d 1025, 1035-36 (Pa. 2007).

> An appellate court, therefore, reviews the exercise of discretion, not the underlying question whether the verdict is against the weight of the evidence. The factfinder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. The trial court will award a new trial only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of

---

[4] The record is not clear as to whether Cameron joined the motion for judgment of acquittal that was orally presented to the trial court. Our review discloses that co-defendant's counsel presented a motion for judgment of acquittal as to the charge of possession of an instrument of crime. N.T., 3/5/15, at 134-35. At the conclusion the discussion between the trial court and co-defendant's counsel, Cameron's counsel stated, "I'm going to make a general motion." N.T., 3/5/14, at 136. The trial court responded, "Denied." *Id.* It is unclear from the record the basis for counsel's motion. Nevertheless, as the trial court stated in its Opinion, Cameron's challenge to the sufficiency of the evidence is without merit. Trial Court Opinion, 1/6/15, at 10. Regardless of whether Cameron preserved this issue for review, the issue lacks merit.

discretion. Thus, the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings.

*Id.* at 1036 (citation omitted).

In its Opinion, the trial court addressed this claim and concluded that it lacks merit. *See* Trial Court Opinion, 1/6/15, at 9-11. We agree with and affirm on the basis of the trial court's Opinion with regard to Cameron's challenge to the weight of the evidence. *See id.*

In his fourth claim, Cameron challenges the sentence imposed for his conviction of possession of a firearm by a prohibited person. *Anders* Brief at 31. Cameron claims that the trial court violated the United States Supreme Court's holding in *Alleyne*, when it imposed a mandatory sentence for the firearms violation. *Id.*

In its Opinion, the trial court addressed this claim and concluded that it lacks merit. *See* Trial Court Opinion, 1/6/15, at 11-13. Of particular note, the record confirms that the trial court did not apply a mandatory sentencing statute when it sentenced Cameron. *See* N.T., 6/4/14, at 10-12 (wherein the Commonwealth does not request application of a mandatory sentencing statute), 13-16 (wherein the trial court applies the sentencing guidelines in sentencing Cameron). We therefore affirm on the basis of the trial court's Opinion with regard to this claim. *See* Trial Court Opinion, 1/6/15, at 11-13.

Petition to withdraw granted; judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/6/2016

IN THE COURT OF COMMON PLEAS
FOR THE COUNTY OF PHILADELPHIL
CRIMINAL DIVISION TRIAL



7241860101

| COMMONWEALTH | : | NO.: CP-51-CR-0002970-2013 |
| OF PENNSYLVANIA | : | |
| | : | |
| v. | : | Superior Court No.: 2010 EDA 2014 |
| | : | |
| MALIK CAMERON | : | |

FILED

JAN 06 2015

**OPINION**

Criminal Appeals Unit
First Judicial District of PA

ANHALT, J.

Appellant in the above-captioned matter appeals this Court's judgment regarding his conviction for Aggravated Assault, Possession of an Instrument of a Crime, and Possession of a Firearm by a Prohibited Person. The Court submits the following Opinion in accordance with the requirements of Pa.R.A.P. 1925(a). For the reasons set forth herein, the Court holds that the judgment should be affirmed.

PROCEDURAL HISTORY

On January 10, 2013, Appellant, Malik Cameron, was arrested and subsequently charged with Aggravated Assault, Conspiracy, Possession of an Instrument of a Crime, and Possession of a Firearm for an incident that occurred on September 3, 2012. A jury trial was held from March 5, 2013, to March 6, 2013, to determine whether the Appellant was guilty on the above charged crimes. The jury, after hearing all evidence presented, found Appellant guilty of Aggravated Assault, a felony of the first degree, and Possession of an Instrument of Crime. The jury found Appellant not guilty of Conspiracy. Appellant requested a bifurcated trial for the Possession of a Firearm by a Prohibited Person, which the Court found Appellant guilty of on June 4, 2014. The

Appellant was sentenced to six to fifteen years incarceration on June 4, 2014.

Appellant filed this timely appeal of the Court's decision on June 4, 2014. On July 2, 2014, this Court ordered Appellant pursuant to Pa. R.A.P. 1925(b) to file with the Court a Concise Statement of Matters Complained of on Appeal within 21 days. Appellant filed a Pa. R.A.P. 1925(b) Statement with the Court on July 23, 2014.

## FACTUAL HISTORY

This case involved an incident that occurred in Philadelphia, PA on September 3, 2012. The complainant, Timothy Clyburn, testified that at the time of the incident he was living at 4649 Marvine Street with his fiancée, Crystal Brown (N.T., 3/5/14, p. 28). On the day of the incident, Lawrence Cameron arrived at the complainant's residence to drop off his daughter, whose mother is Crystal Brown (N.T., 3/5/14, p. 29). Because the mother was not present at the time, the complainant explained that he and Lawrence Cameron had a verbal argument (N.T., 3/5/14, p. 31). Lawrence Cameron refused to leave the child without the mother present and ultimately left the complainant's residence (N.T., 3/5/14, p. 31). Approximately fifteen minutes later, Lawrence Cameron returned to the complainant's residence with his daughter and two other men (N.T., 3/5/14, p. 32). Although one of the additional men could not be identified by the complainant, the complainant was able to identify the other man as the Appellant, Malik Cameron (N.T., 3/5/14, p. 32).

During Lawrence Cameron's second visit to the complainant's house, Crystal Brown was present and Lawrence passed her their child (N.T., 3/5/14, p. 34). Once Crystal left the front of the house, the Appellant flashed a black handgun towards the complainant and the complainant believed he saw the unidentified man carrying a firearm as well (N.T., 3/5/14, p. 35-37). The three men then left the complainant's residence and walked down the street (N.T., 3/5/14, p. 38).

The complainant testified that he did not call the police at the time because he did not think the situation was very serious and he was confused as to why the Appellant had pulled the gun out (N.T., 3/5/14, p. 38).

The complainant, Mr. Clyburn, then testified that he left his residence in Crystal Brown's car, somewhere between 15 and 30 minutes after the second altercation, to get food for his pregnant fiancée (N.T., 3/5/14, p. 39). The complainant reached an intersection a few blocks from his residence and saw the three men from earlier, including the Appellant, walking towards his car (N.T., 3/5/14, p. 40). Because the three men were five to ten feet from his car and wearing the same clothing from earlier, the complainant was able to positively recognize them immediately (N.T., 3/5/14, p. 41). The complainant saw the Appellant and the unidentified man raising their arms and then heard gun shots, one of which he believed hit the driver's side window and two which hit the driver's door (N.T., 3/5/14, p. 42). The complainant stated that he ducked and drove off to avoid being struck by a gunshot (N.T., 3/5/14, p. 42). Once he was two blocks away, the complainant stopped to make sure he had not been shot and to check and see if the car had actually been hit (N.T., 3/5/14, p. 43).

Once the complainant felt he was safe, he called Crystal Brown and the police to tell them that shots had been fired towards him and he then waited at the scene (N.T., 3/5/14, p. 44). The complainant was able to give a description of those who shot at him to the police, including Lawrence Cameron's name (N.T., 3/5/14, p. 44). Crystal Brown was able to provide the Appellant's name to police as someone matching the description the complainant had given them (N.T., 3/5/14, p. 45). The complainant was then directed by officers on scene to go to the Northwest Detectives Unit with Crystal Brown to give a complete statement regarding the incident (N.T., 3/5/14, p. 46). The complainant stated that he observed two bullet holes in the

door of the car before he left the scene (N.T., 3/5/14, p. 47).

Crystal Brown testified that she was in the shower the initial time Lawrence Cameron attempted to drop off their daughter (N.T., 3/5/14, p. 82). She testified that Lawrence Cameron later returned to drop off their daughter with his cousin, the Appellant, and another unknown gentleman whom she had never met before (N.T., 3/5/14, p. 83). Ms. Brown explained that approximately 15 minutes after the three men left her residence, her fiancé, the complainant, left in her car to get food (N.T., 3/5/14, p. 85). Sometime after he left, Crystal Brown received a phone call from the complainant and was told that someone had shot at him and her car (N.T., 3/5/14, p. 87). Although she did not meet her fiancé at the crime scene, she saw her vehicle later on and noticed at least one bullet hole on the driver's door (N.T., 3/5/14, p. 87).

Police Officer Rosenbaum, a Philadelphia police officer for eight years, testified that he received a radio call on the day of the incident that there was a person with a gun (N.T., 3/5/14, p. 92). As he and his partner reached the scene of the alleged shooting, they were flagged down by the complainant (N.T., 3/5/14, p. 92). As per protocol, Officer Rosenbaum immediately spoke to the complainant about what had occurred (N.T., 3/5/14, p. 92). Officer Rosenbaum explained that the complainant identified the offenders as Lawrence Cameron and the Appellant, and that there was a third unknown male (N.T., 3/5/14, p. 93, 99). The officer also inspected the car at the scene and believed the car had been stuck twice by gunfire (N.T., 3/5/14, p. 95-96).

Detective Druding, a Philadelphia Detective for about eight years, was called out to the crime scene to take pictures of the vehicle and to look for evidence in the surrounding area (N.T., 3/5/14, p. 103). After the Detective took photographs of the vehicle, he searched multiple blocks in an attempt to find physical evidence or additional witnesses (N.T., 3/5/14, p. 104). Detective Druding did not find any ballistic evidence, which he attributed to the rainy weather washing

away, or any relevant witnesses (N.T., 3/5/14, p. 104). Upon inspection of the vehicle, the Detective believed the marks on the vehicle were consistent with bullet fire (N.T., 3/5/14, p. 108, 115). He testified that he believed these marks were recent because the metal and paint around them had not begun to rust (N.T., 3/5/14, p. 107). The Detective also explained that it was not unusual to find a lack of ballistic evidence at a crime scene (N.T., 3/5/14, p. 115).

Detective Philippi, who has worked as a Philadelphia police officer for over 14 years, was the assigned Detective to the incident that occurred to the complainant (N.T., 3/5/14, p. 120). The Detective interviewed the complainant and showed him a photo array, where the complainant was able to positively identify the Appellant and his cousin, Lawrence Cameron, without hesitation (N.T., 3/5/14, p. 121-122). Detective Philippi testified that search warrants were issued and executed on both the Appellant and Lawrence Cameron's homes (N.T., 3/5/14, p. 123). Officers recovered two "glock" manufactured gun cases in the Appellant's basement (N.T., 3/5/14, p. 123). Both boxes had instructions and cleaning supplies in them, but neither box contained the actual firearms (N.T., 3/5/14, p. 124). No guns or bullets were discovered during the searches at either house (N.T., 3/5/14, p. 130). It was stipulated that the Appellant was not authorized at the time of the incident to carry a firearm in Philadelphia (N.T., 3/5/14, p. 132).

## DISCUSSION

1. **Appellant claims that the Court committed reversible error when it denied Appellant's motions for a directed verdict and/or judgment of acquittal at the close of the Commonwealth's case.**

Appellant claims that the Court erred when it denied the Appellant's motions for a directed verdict and/or a judgment of acquittal at the close of the Commonwealth's case because the Commonwealth had not proven each and every element of the crimes charged. This claim is meritless because it is being raised for the first time on appeal.

In considering an issue on appeal, the issue must have been initially raised in the lower court; otherwise it has been waived and cannot be introduced for the first time at the appellate level. Pa.R.A.P. 302. This standard ensures that the lower court has the opportunity to consider the issue, that the lower court has the opportunity to correct the issue, and that judicial resources are used efficiently. *In re F.C. III*, 607 Pa. 45, 64 (2010); *Lincoln Philadelphia Realty Associates I v. Bd. of Revision of Taxes of City & Cnty. of Philadelphia*, 563 Pa. 189, 203 (2000); *Wing v. Com. Unemployment Comp. Bd. of Review*, 496 Pa. 113, 117 (1981). Courts have determined that even constitutional issues cannot be raised for the first time on appeal. *Coulter v. Ramsden*, 94 A.3d 1080, 1089 (Pa. Super. 2014); *Estate of Fridenberg*, 982 A.2d 68, 76 (Pa. Super. 2009).

Here, the Appellant did not file a motion for a directed verdict or for a judgment of acquittal. During the trial, the co-defendant, Lawrence Cameron, requested a motion for acquittal on the aggravated assault and possession of an instrument of crime charges which was denied by the Court. The Appellant never requested to be included in the co-defendant's motion for directed verdict or judgment of acquittal, nor did the Appellant make his own motion for directed verdict or judgment of acquittal. Because the Appellant failed to raise the issue during the trial, the issue was waived and he is prohibited from arguing it on appeal. Additionally, even if the Appellant had requested a motion for directed verdict or a judgment of acquittal, it would have been denied.

In considering a motion for a directed verdict, the Court may grant the motion only where the facts are clear and there is no room for doubt. *Fetherolf v. Torosian*, 759 A.2d 391, 393 (Pa. Super. 2000); *Lear, Inc. v. Eddy*, 749 A.2d 971, 973 (Pa. Super. 2000). On a motion for a directed verdict, the trial court is required to consider the facts in the light most favorable to the nonmoving party and must accept as true evidence that supports the nonmoving party's

contentions and reject all adverse testimony. *Perkins v. Desipio*, 736 A.2d 608, 609 (Pa. Super. 1999). A Court may grant a motion for judgment of acquittal when the evidence presented by the Commonwealth is not sufficient to sustain a conviction beyond a reasonable doubt on the particular charge. *Commonwealth v. Andrulewicz*, 911 A.2d 162, 165 (Pa. Super.2006). To determine when evidence is sufficient, the Court must determine whether viewing all the evidence admitted in the light most favorable to the potential verdict winner, there is sufficient evidence to enable the fact-finder to find every element beyond a reasonable doubt. *Commonwealth v. DiStefano*, 782 A.2d 574, 582 (Pa. Super. 2001).

Considering the facts in the light most favorable to the nonmoving party, the Commonwealth, and accepting as true evidence that supports the Commonwealth's contentions, it is clear that the Appellant was involved in the shooting on September 3, 2012. The complainant testified that the Appellant was present during the argument at his home the morning of the incident. The Appellant was also identified as one of the men that raised their hands and fired a gun towards the complainant, wearing the same clothing from the argument earlier in the day. Evidence was presented by the Commonwealth that bullets struck the complainant's car, bullets which could have easily caused serious bodily injury to the complainant had they hit him instead. Finally, the Appellant and the Commonwealth stipulated that the Appellant was prohibited from carrying a firearm at the time of the incident. Viewing the evidence in the light most favorable to the nonmoving party, the evidence is sufficient to prove each and every element of the crimes charged. As a result, a directed verdict or judgment of acquittal would not have been granted.

2. **Appellant claims that the evidence was insufficient to sustain his convictions and that the verdict was against the weight of the evidence.**

Appellant argues that the evidence was insufficient as a matter of law and that the verdict

was against the weight of evidence because no reasonable fact-finder could find that the Commonwealth proved Appellant guilty. Appellant further claims that the aggravated assault, 18 Pa.C.S.A § 2702(a)(1), verdict is so contrary to the evidence that it shocks one's sense of justice.

In considering a challenge to the sufficiency of the evidence, the reviewing court must determine whether, viewing all the evidence at trial and the reasonable inferences therefrom in the light most favorable to the Commonwealth, the trier of fact could have found that each element of the offense charged was proven beyond a reasonable doubt. *Commonwealth v. Chine*, 40 A.3d 1239, 1242 (Pa. Super. 2012); *Commonwealth v. Marinelli*, 690 A.2d 203, 210-11 (Pa. 1997); *Commonwealth v. Gaskins*, 692 A.2d 224, 227 (Pa. Super. 1997). This standard is applicable whether the evidence presented is circumstantial or direct, provided the evidence links the accused to the crime beyond a reasonable doubt. *Commonwealth v. Morales*, 669 A.2d 1003, 1005 (Pa. Super. 1996). Questions of witness credibility and the weight to be afforded the evidence are within the sole province of the finder of fact, who is free to believe all, part, or none of the evidence. *Commonwealth v. Woods*, 638 A.2d 1013, 1015 (Pa. Super. 1994); *Commonwealth v. Mayfield*, 585 A.2d 1069 (Pa. Super. 1991). Any doubts regarding a defendant's guilt may be resolved by the fact-finder, unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. *Commonwealth v. Chine*, 40 A.3d 1239, 1242 (Pa. Super. 2012).

A person is guilty of aggravated assault as a felony of the first degree if he attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life. 18 Pa.C.S.A. § 2702(a). Here, evidence that the Appellant was observed raising a handgun and firing towards the complainant is sufficient to prove the Appellant is guilty of aggravated assault.

Firing a handgun directly towards the complainant from a few feet away could have caused serious bodily injury, if not death, had the bullets struck the complainant rather than the vehicle door. The Appellant knew that serious bodily injury could have occurred when he raised his firearm and shot towards the complainant, yet he decided to do it anyways.

A person is guilty of possessing an instrument of crime as a misdemeanor of the first degree if he possesses any instrument of crime with intent to employ it criminally. 18 Pa.C.S.A. § 907(a). An instrument of crime can be anything specially made or adapted for criminal use, or anything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses the instrument may have. 18 Pa.C.S.A. § 907(d). Here, evidence that the Appellant possessed a firearm during the altercation and fired it towards the complainant is sufficient to prove the Appellant is guilty of possessing an instrument of crime. The firearm was used for criminal purposes, the aggravated assault, and shooting towards an innocent, unarmed bystander is never a lawful use of a firearm.

A person is guilty of possession of a firearm by a prohibited person as a felony of the second degree if he is someone who has been convicted of an offense under The Controlled Substance, Drug, Device and Cosmetic Act, and he is determined to have possessed, used, or controlled a firearm. 18 Pa.C.S.A. § 6105. Here, evidence was presented that the Appellant had at least one prior conviction for possession with intent to deliver, which is a violation of The Controlled Substance, Drug, Device and Cosmetic Act, and that he was in possession and used a firearm at the time of the incident. After being convicted of possession with intent to deliver, under The Controlled Substance, Drug, Device and Cosmetic Act, the Appellant was prohibited from possessing, using, controlling, transferring, or maintaining a firearm. Appellant used a firearm to shoot towards the complainant and there was evidence that Appellant may be in

possession of additional firearms, as two firearm boxes were found at his residence. This evidence is sufficient to prove the Appellant is guilty of felony possession of a firearm by a prohibited person.

The Appellant claims that the Court erred by allowing the case to go to the jury because the Appellant believes that the Commonwealth failed to prove each and every element of the crimes charged. Evidence presented during the trial showed that the Appellant, who was with two other men at the intersection, raised a firearm and fired towards the complainant. Officers relayed to the jury that they believed the strike marks on the complainant's car were consistent with gun shots. The complainant positively identified the Appellant as one of the men that fired a handgun towards him and his fiancée's vehicle. Finally, evidence was submitted that the Appellant had previously been convicted of possession with the intent to deliver, making him ineligible to possess, use, or carry a firearm. This evidence, when taken as credible by the jury, proves each and every element of the crimes charge, therefore, the Appellant's claim of insufficient evidence is meritless.

Appellant also contends that the verdict of guilty was against the weight of the evidence, specifically the aggravated assault, 18 Pa.C.S.A. § 2702(a)(1), verdict. The Appellant argues that the jury and Court erred in finding him guilty because the verdict was so contrary to the evidence presented that it shocks one's sense of justice. This challenge to the weight of the evidence, similar to the challenge of sufficiency of evidence, is meritless.

The decision whether to grant a new trial based on the grounds that the verdict was against the weight of the evidence rests solely within the discretion of the trial court. *Commonwealth v. Pronkoskie*, 498 Pa. 245, 251 (1982). "For a new trial to lie on a challenge that the verdict is against the weight of the evidence, the evidence must be so tenuous, vague and

uncertain that the verdict shocks the conscience of the court." *Commonwealth v. Edwards*, 582 A.2d 1078, 1083 (Pa. Super. 1990); *Commonwealth v. Shaffer*, 722 A.2d 195, 200 (Pa. Super. 1998); *Commonwealth v. Johnson*, 910 A.2d 60, 64 (Pa. Super. 2006). Appellant offers nothing additional in support of his weight of the evidence claim that has not already been raised in his claim challenging the sufficiency of the evidence.

As stated above, in regard to Appellant's sufficiency claim, there was sufficient credible evidence to prove aggravated assault, possession of an instrument of a crime, and felony possession of a firearm by a prohibited person. The Appellant claims that the guilty verdicts, especially the 18 Pa.C.S.A. § 2702(a)(1) charge, were so contrary to the weight of evidence that it shocks one's sense of justice. There was evidence at trial that the Appellant fired a handgun towards the complainant, striking his vehicle multiple times, due to an altercation that occurred earlier in the day. The complainant was able to positively identify the Appellant as one of the men that fired towards him on the day of the incident. The evidence presented was not so tenuous, vague, or uncertain that a verdict of guilty shocks the conscience of the jury or the Court. As a result, the jury's verdict and the Court's verdict are not against the weight of the evidence.

3. **Appellant claims that the Court erred when, sitting as a jury at the bifurcated trial and sentencing, it did not comply with the spirit of *Alleyne v. United States*, whereby the aggravating factors of 18 Pa.C.S.A. §6105, making the sentence a mandatory sentence, were not enumerated on the record at trial or sentencing.**

Appellant claims that the Court erred, while sitting as a jury at a bifurcated trial and at sentencing, when it did not comply with *Alleyne v. United States*. 133 U.S. 2151 (2013). The Appellant argues that the aggravating factors of the possession of a firearm by a prohibited person, § 6105, making the sentence a mandatory sentence, were not enumerated on the record at trial or at sentencing. According to the Appellant, there is nothing on the record which points to

the Court's awareness that this case, specifically the §6105 charge, was a mandatory minimum matter. As a result, Appellant believes the Court did not consider the factors and elements which made the case a mandatory matter and therefore Appellant argues that the sentence is incorrect. Appellant's claim is baseless, because the charge possession of a firearm by a prohibited person charge, § 6105, does not carry a mandatory minimum sentence, which means *Alleyne* does not apply. *Id.*

Each and every fact or element that increases the penalty for a crime must be submitted to the jury and must be found beyond a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. 466, 483 (2000). Elements that increase the mandatory minimum sentence for a crime must also be submitted to the jury to be found beyond a reasonable doubt. *Alleyne v. United States*, 133 S. Ct. 2151, 2155 (2013). Statutes allowing a court to determine whether elements for a mandatory minimum sentence were present in a crime, like 42 Pa.C.S.A. § 9127, have been ruled unconstitutional, as they do not allow the jury to determine beyond a reasonable doubt whether theses aggravating elements were present. *Commonwealth v. Newman*, 99 A.3d 86, 98 (Pa. Super. 2014); *Commonwealth v. Valentine*, 2014 PA Super 220 (2014). Although the Appellant originally did not raise this claim at the trial, the application of a mandatory minimum sentence gives rise to illegal sentencing concerns; therefore, the legality of the sentence is not waivable, regardless of whether the sentence is within the statutory limits. *Commonwealth v. Watley*, 81 A.3d 108, 118 (Pa. Super. 2013).

Although the § 6105 charge does not contain a mandatory minimum sentencing component, this Court, in deciding Appellant's post-conviction sentence, briefly mentioned a mandatory minimum sentence of five years under 42 Pa.C.S.A. § 9127. If the Court had sentenced the Appellant to this mandatory minimum, the jury would have had to find every

element of the mandatory minimum sentence beyond a reasonable doubt at trial, or the sentence would have been contrary to *Alleyne*. However, the Court chose, after considering mitigating and aggravating circumstances, to sentence the Appellant to a term of imprisonment within the sentencing guidelines rather than applying the mandatory minimum sentence required by 42 Pa.C.S.A. § 9127. Aggravating factors against the Appellant included three convictions for Possession With the Intent to Deliver, one conviction for Theft, and the jury's conviction for Aggravated Assault. The Appellant was able to argue before the Court that the bullets did not hit the complainant during the shooting, as a result there was no bodily injury, and he showed that he had strong family support, which the Court considered to be mitigating factors. With these factors in mind, the Court sentenced the Appellant to a term of imprisonment of six to fifteen years, which was within the sentencing guidelines, rather than applying the mandatory minimum sentence required by 42 Pa.C.S.A. § 9127. Because a guideline range was applied rather than a statutory mandatory minimum, the "spirit" of *Alleyne* does not apply as there was no mandatory minimum applied in the Appellant's sentence, especially to the § 6105 charge, which does not carry a mandatory minimum sentence.

**CONCLUSION**

For the foregoing reasons, the underlying judgment should be affirmed.


BY THE COURT:

*Diana Anhalt*
DIANA ANHALT, J.


January 5, 2015

## PROOF OF SERVICE

I hereby certify that on the date set forth below, I caused an original copy of the Judicial Opinion to be served upon the persons at following locations, which service satisfies the requirements of Pa.R.A.P. 122:

Robert W. Muench, Esquire
912 Cargill Lane
Philadelphia, PA 19115

Hugh Burns, Esquire
Philadelphia District Attorneys Office
Three South Penn Square
Philadelphia, PA 19107


Date: 1-6-15                    By: _Diana Anhalt_
                                    Diana Anhalt, Judge